# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| POSSIBLE DREAMS, LTD., | ) | Chapter 11 |
| | ) | Case No. 03-_____- |
| Debtor. | ) | |
| | ) | |

*OCT 22 '03 PM 4:06 USB*

# DEBTOR'S APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN JEANNE P. DARCEY AND PALMER & DODGE LLP AS LOCAL COUNSEL FOR THE DEBTOR

Possible Dreams, Ltd., the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"), respectfully requests the entry of an Order authorizing the retention and employment of Jeanne P. Darcey, Esquire and the law firm of Palmer & Dodge LLP. ("P&D" or the "Firm"), nunc pro tunc to the Petition Date, to represent the Debtor as its local bankruptcy counsel in this Chapter 11 case. In support of this Application, the Debtor relies on the Affidavit of Jeanne P. Darcey (the "Darcey Affidavit") submitted herewith and the Affidavit of Russell F. Peppet in Support of Chapter 11 Petition and First Day Motions filed contemporaneously herewith. In further support of this Application, the Debtor respectfully represents as follows:

## INTRODUCTION

### A.  Chapter 11 Filing.

1.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and continues to operate its businesses and manage its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Debtor operates from its principal place of business located at 6 Perry

Drive, Foxboro, Massachusetts 02035.

2.      As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory predicates for the relief requested herein are § 327(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

**B.      Background and Business Operations**

5.      The Debtor is a Delaware corporation that is engaged in the business of manufacturing, marketing and distributing gift and collectible items.  Specifically, the Debtor is a collectible and giftware company known for its branded line of Clothtique®, Flights of Fancy®, and Celtic Collection figurines and other specialty giftware products.  The Debtor designs, imports and distributes its product throughout the United States.  The Debtor sells its products through a large and diverse network composed of independent gift and collectible retailers, premier department stores, selected catalog retailers and other electronic and retail channels.

6.      The Clothtique® line consists of hand crafted, collectible figures dressed in a combination of stiffened cloth, ceramic and other materials, and primarily featuring Santa Claus in a variety of costumes, situations and themes.  Given the nature of the Debtor's business, its sales are highly seasonal, with a large volume of sales typically occurring prior to the winter holiday season.

**C.      Proposed Purchase and Sale of the Debtor's Assets.**

**(1) Sale of Business (Non-Real Estate) Assets.**

7.      As a result of unfortunate economic conditions in late 2002 and into 2003, as well as an expected shortage of available cash to timely satisfy its anticipated liabilities and obligations, the Debtor decided that it was in its best interest and the best interests of its creditors and other stakeholders to sell all or substantially all of its assets. As such, prior to the Petition Date, the Debtor began to market its assets for sale. Such efforts resulted in an Agreement for the Purchase and Sale of Assets, dated October 22, 2003 (the "Purchase Agreement"), by and between the Debtor and Willitts Designs International, Inc. ("Willitts"). Willitts is not related to the Debtor or any of its principals. Pursuant to the terms of the Purchase Agreement, the Debtor proposes to sell all of its non-real estate assets, including without limitation, inventory and accounts receivables (the "Assets") to Willitts for approximately $6.0 million, subject to higher or better offers.

8.      Pursuant to the terms of the Purchase Agreement, Willitts requires that the Debtor seek approval of the sale of the Assets to Willitts pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code. The Debtor believes that the sale of the Assets to Willitts will maximize the value of such Assets for the benefit of all creditors of the estate. As such, the Debtor is contemporaneously filing a motion to approve the sale of the Assets to Willitts pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code, which sale is subject to higher and better offers and the approval of this Court. The Debtor is also filing a motion seeking approval of separate bidding procedures and bid protections in connection therewith.

9.      Due to the highly seasonal nature of the Debtor's business, Willitts is only willing to consummate the purchase of the Assets and pay the purchase price provided for in the Purchase Agreement if the closing on the sale of the Assets occurs on or prior to November 30, 2003. As such, one of the conditions precedent to the sale of the Assets to Willitts is that the

motion to approve the sale be filed immediately after the filing of the within Chapter 11 case and that the closing thereon occur on or before November 30, 2003.

### (II) Sale of Real Estate.

10.      Pursuant to the Purchase Agreement, Willitts is not acquiring the Debtor's real estate located at 6 Perry Drive, Foxboro, Massachusetts (the "Foxboro Property"). As such, the Debtor has been simultaneously marketing the Foxboro Property for sale. The Debtor has received a written offer, dated September 10, 2003, for the purchase of the Foxboro Property from James Greene and Likarr, Inc., who are third parties unrelated to Willitts or the Debtor. The Debtor is currently negotiating the final terms of a proposed purchase and sale agreement with Mr. Greene and Likarr, Inc. (the "Real Estate Agreement"). The current terms of the Real Estate Agreement propose a closing on December 1, 2003, with the Debtor leasing the Foxboro Property for the month of December and having the right to lease the Foxboro Property during January 2004 so as to enable the Debtor to consummate the sale of the Assets to Willitts or another buyer who submits a higher or better offer for the Assets. Upon finalizing and executing the Real Estate Agreement, which the Debtor expects to be within the next several days, the Debtor will file a motion to approve the sale of the Foxboro Property pursuant to the terms of the Real Estate Agreement (the "Real Estate Sale Motion").

11.      The Debtor anticipates that the aggregate net proceeds from the sale of the non-real estate Assets to Willitts and the sale of the Foxboro Property to James Greene and Likarr, Inc. will be sufficient to pay in full the secured debt on the Assets and Foxboro Property owed by the Debtor to LaSalle Business Credit, LLC (successor by merger to LaSalle Business Credit, Inc.) described below and to produce a surplus for ultimate distribution to unsecured creditors in this Chapter 11 case.

### D.    Secured Claims of LaSalle Business Credit, Inc.

12.     On or about December 31, 2001, the Debtor entered into a Loan and Security Agreement (the Loan Agreement") with LaSalle Business Credit, Inc. (the "Lender"). Pursuant to the Loan Agreement, The Lender made a series of loans and advances to the Debtor of up to $16 million. Such loans consisted of (i) a revolving line of credit in the maximum amount of $12.7 million (the "Line of Credit"), and (ii) two term loans, one in the original principal amount of $1.5 million ("Term Loan A") and the second in the original principal amount of $1.8 million ("Term Loan B").

13.     In connection with the Line of Credit, the Debtor established a "lockbox" account under the Lender's control and  directed its account debtors to make all payments to the lockbox. Upon receipt of such payments into the lockbox, the Lender would sweep such funds and apply them to reduce the then outstanding balance of the Line of Credit.  Thereafter, the Lender would make advances to the Debtor under the Line of Credit (subject to certain borrowing base limitations) in order to enable the Debtor to meet its obligations. As of October 21, 2003, a total of $6,304,102.33 was due under the Line of Credit, $1,237,500 due under Term Loan A and $225,000 due under Term Loan B.

14.     In order to secure its obligations under the Loan Agreement, the Debtor granted a first priority lien and security interest in all of its assets, including without limitation goods, inventory, accounts, receivables, cash collateral, investment property, chattel paper, instruments, documents, letter of credit rights, deposits, general intangibles and customer lists, to the Lender, as well as all products and proceeds of any of the foregoing and books and records relating to any of the foregoing and the Debtor's business.  In addition, the Debtor granted a first mortgage lien to the Lender on the Foxboro Property.

## RELIEF REQUESTED

15.     By this Application, the Debtor seeks to employ and retain Jeanne P. Darcey, Esq. and the law firm of P&D as its local bankruptcy counsel with regard to the filing of this Chapter 11 petition and the prosecution of this Chapter 11 case.  Accordingly, the Debtor respectfully requests entry of an order pursuant to Section 327(a) of the Bankruptcy Code authorizing it to employ and retain Jeanne P. Darcey, Esq. and the law firm of P&D as its attorneys under a general retainer to perform the legal services that will be necessary during the Chapter 11 case as more fully described below.

16.     Prior to the commencement of this Chapter 11 case, the Debtor sought the services of P&D to represent it, as local counsel, in its restructuring efforts, including the preparation, review and filing of the Debtor's Chapter 11 petition and related so-called "first day" pleadings. P&D will assist Genovese, Joblove & Battista, P.A. ("GJB"), which firm the Debtor seeks to retain as its primary bankruptcy counsel.  GJB has forwarded certain information to P&D of the Debtor's capital structure, operations, and other material agreements.  As a result, the Firm is familiar with the Debtor's business affairs and many of the potential legal issues that may arise in the context of this Chapter 11 case.

17.     The Debtor has selected the firm of P&D as its attorneys because of the firm's extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

18.     The Debtor desires to employ the firm of P&D under a general retainer because of the extensive legal services that will be required in connection with the Chapter 11 case and the firm's familiarity with the Chapter 11 process.

## SERVICES TO BE RENDERED

6

19.     It is contemplated that P&D will render services as local bankruptcy counsel to

the Debtor as needed throughout the course of these Chapter 11 cases.  P&D will endeavor that

the services to be provided (and described below) will not overlap with the services to be

provided by GJB, although it is likely that both P&D and GJB will, to some extent, necessarily

be involved in all matters relating to the Debtor's bankruptcy proceeding.  In particular, it is

anticipated that P&D will render the following legal services:

    a.   Advise the Debtor with respect to its powers and duties as debtor in possession in the continued management and operation of its business and property;

    b.   Represent the Debtor at all hearings and matters pertaining to its affairs as debtor and debtor-in-possession;

    c.   Attend meetings and negotiate with representatives of the Debtor's creditors and other parties-in-interest, as well as respond to creditor inquiries;

    d.   Take all necessary action to protect and preserve the Debtor's estates;

    e.   Prepare on behalf of the Debtor all necessary and appropriate motions, applications, answers, orders, reports and papers necessary to the administration of Debtor's estates;

    f.   Review applications and motions filed in connection with these cases;

    g.   Negotiate and prepare on the Debtor behalf a plan of reorganization, disclosure statement, and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan;

    h.   Advise the Debtor in connection with any potential sale of assets or business, or in connection with any strategic partnering;

    i.   Review and evaluate the Debtor's executory contracts and unexpired leases and represent the Debtor in connection with the rejection, assumption or assignment of such leases;

    j.   Consult with and advise the Debtor regarding labor and employment matters;

    k.   Represent the Debtor in connection with any adversary proceedings or automatic stay litigation which may be commenced by or against the Debtor;

l.   Review and analyze various claims of the Debtor's creditors and the treatment of such claims and the preparation, filing or prosecution of any objections thereto; and

m.   Perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 case.

20.   The firm of P&D is willing to act on behalf of the Debtor as set forth above.

## DISINTERESTEDNESS OF PROFESSIONALS

21.   Except as set forth in the Darcey Affidavit, to the best of the Debtor's knowledge, the partners, counsel and associates of the firm of P&D (a) do not have any connection with the Debtor, its affiliates, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants; (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtor's estate.

22.   More specifically, as set forth in the Darcey Affidavit:

a.   Neither P&D, nor any attorney at the Firm are creditors, equity security holders or insiders of the Debtor;

b.   Neither P&D, nor any attorney at the Firm are or were investment bankers for any outstanding security of the Debtor;

c.   Neither P&D, nor any attorney at the Firm have been, within three years before the date of the filing of the Debtor's Chapter 11 petition, (i) investment bankers for a security of the Debtor, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor;

d.   Neither P&D, nor any attorney at the Firm are or were, within two years before the date of filing of the Debtor's Chapter 11 petition, a director, officer, or employee of the Debtor or of any investment banker as specified in subparagraph (b) or (c) of this paragraph; and

e.   Neither P&D, nor any attorney at the Firm has an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship with, or interest in, the Debtor or an

investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason.

## PROFESSIONAL COMPENSATION

23.    On or about October 15, 2003, the Debtor provided a payment to P&D in the amount of $25,000 for services rendered from October 6, 2003 through the Petition Date in preparation of the filing of the Petition and for services to be rendered after the Petition Date (the "Retainer"), all from working capital and/or borrowings under their existing prepetition credit facility. Immediately prior to the Petition Date (from approximately October 6, 2003 through the Petition Date), P&D rendered services and incurred expenses on behalf of the Debtor with a value of approximately $16,076.00; such services included advice relating to the filing of the Petition, including the local rules applicable with respect thereto, the filing of the voluntary bankruptcy petition and the preparation and review of various so called "first day" pleadings. The balance of the retainer not used to pay prepetition fees and expenses (estimated to be approximately $8,924.00) shall be held for services to be rendered after the Petition Date. Such balance of the Retainer will be held by P&D as security during the pendency of this case, and will be applied until fully utilized, in payment of services rendered, in accordance with any interim compensation procedures as approved by this Court, or to the extent authorized upon application to the Court for reimbursement of such fees and expenses.

24.    P&D intends to apply for compensation for professional services rendered in connection with these Chapter 11 cases subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, the Local Rules of Bankruptcy Procedure and orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that the Firm incurs in connection with these Chapter 11 cases. P&D will charge the Debtor its then current standard hourly rates. The Firm periodically reviews and adjusts its

billing rates.

25.    It is the Firm's policy to charge its clients in all areas of practice for all expenses incurred in connection with the client's case.  The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime support, filing and recording fees, telecopier use, postage, express mail, messenger services, computerized legal research services and other computer services, and costs for "working meals."  Subject to this Court's approval, the Firm will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients.

26.    Other than as set forth herein and in the Darcey Affidavit, no arrangement is proposed between the Debtor and P&D for compensation to be paid in these cases, and no agreement or understanding exists between P&D and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

27.    No previous request for the relief sought in this Application has been made to this Court or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court enter an Order (i) authorizing the Debtor's retention of Jeanne P. Darcey, Esq. and the law firm of P&D upon the terms outlined in this Application, nunc pro tunc to the Petition Date; and (ii) granting such other and further relief as is just and proper.

Respectfully Submitted on October 21, 2003.

POSSIBLE DREAMS, LTD.

By: _Russell F. Peppet_

Russell F. Peppet,
Chairman and Chief Executive Officer

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:                                    )
                                          )
     POSSIBLE DREAMS LTD.,                )
                                          )        Chapter 11
                                          )        Case No. 03-____-___
                             Debtor.      )
                                          )        OCT 22 '03 PM 4:06 USB

**AFFIDAVIT OF JEANNE P. DARCEY IN SUPPORT OF DEBTOR'S
APPLICATION FOR AUTHORITY TO EMPLOY AND RETAIN JEANNE P. DARCEY
AND PALMER & DODGE LLP AS ATTORNEY FOR THE DEBTOR**

JEANNE P. DARCEY, being duly sworn, deposes and says:

1.    I am a member of the firm of Palmer & Dodge LLP, ("P&D" or the "Firm"), having

an address at 111 Huntington Avenue, Boston, Massachusetts 02199.  I am admitted to practice

in the Commonwealth of Massachusetts, the United States District Court for the District of

Massachusetts and the United States Court of Appeals for the First Circuit.  I am authorized to

make this affidavit on P&D's behalf.  This Affidavit is submitted pursuant to Rule 2014(a) of the

Federal Rules of Bankruptcy Procedure and Massachusetts Local Bankruptcy Rule 2014-1 in

support of the Application of the debtor in the above-captioned Chapter 11 case (the "Debtor")

for an order pursuant to Section 327(a) of the Bankruptcy Code authorizing the employment and

retention of P&D as attorneys for the Debtor (the "Application").

### Disinterestedness of Professionals

2.    Based on the Firm's conflicts search conducted to date and described herein, to the

best of my knowledge, neither I, the Firm, nor any member, counsel or associate thereof, insofar

as I have been able to ascertain, has any connection with, or holds an interest adverse to, the

Debtor, its creditors or any other parties in interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee, except as disclosed or as otherwise described herein.

3.   I and each member of my Firm is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that the Firm, its partners, counsel and associates:

    a.    are not creditors, equity security holders or insiders of the Debtor;

    b.    are not and were not investment bankers for any outstanding security of the Debtor;

    c.    have not been, within three years before the date of the filing of the Debtor's Chapter 11 petition, (i) investment bankers for a security of the Debtor, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtor;

    d.    are not and were not, within two years before the date of filing of the Debtor's Chapter 11 petition, a director, officer, or employee of the Debtor or of any investment banker as specified in subparagraph (b) or (c) of this paragraph; and

    e.    do not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship with, or interest in, the Debtor or an investment banker specified in subparagraph (b) or (c) of this paragraph, or for any other reason.

4.   I am not related, and to the best of my knowledge, no attorney at the Firm is related, to any United States Bankruptcy Judge in this District or to the United States Trustee for this District or any employee thereof.

5.   In October of 2003, the Debtor retained P&D to represent it, as local counsel, in its restructuring efforts, including the preparation, review and filing of the Debtor's Chapter 11 petition and related so called "first day" pleadings.  P&D will assist Genovese, Joblove & Battista, P.A. ("GJB"), which firm the Debtor seeks to retain as its primary bankruptcy counsel. GJB has forwarded certain information to P&D of the Debtor's capital structure, operations, and

2

other material agreements.  As a result, the Firm is familiar with the Debtor's business affairs and many of the potential legal issues that may arise in the context of this Chapter 11 case.

6.  As of October 22, 2003 (the "Petition Date"), except as disclosed in this paragraph, the Debtor does not owe P&D any amounts for legal services rendered before the Petition Date.  During the period from October 6, 2003 through the Petition Date, P&D rendered services to the Debtor and incurred legal fees and expenses in the approximate amount of $18,004.60 (the "Pre-petition Fees").

7.  The Firm and certain of its members, counsel and associates may have in the past represented, may currently represent, and likely in the future will represent, parties in interest, including creditors of the Debtor in connection with matters unrelated to the Debtor and this bankruptcy case.  P&D has conducted a search of its electronic database utilizing the Firm's e-mail and telephonic conflict reporting system (the "Conflict Check System") for its connection to the entities listed on the exhibits (Exhibits A through D) attached to this Affidavit.  The information listed on the exhibits may be updated or may change during the pendency of these cases.  I will update this Affidavit when necessary and when I become aware of additional material information.  The exhibits to this Affidavit provide the following information:

a.     equity security holders of the Debtor as listed on <u>Exhibit A</u>;

b.     officers, directors and executives of the Debtor as listed on <u>Exhibit B</u>;

c.     significant unsecured creditors of the Debtor as listed on <u>Exhibit C</u>; and

d.     the secured lenders of the Debtor as listed on <u>Exhibit D</u>.

8.  Although not material to the conclusion that P&D is "disinterested," in an abundance of caution, listed below is a summary of the results of P&D's conflicts searches of the above categories of entities.

3

9. P&D's conflicts search of the Debtor's equity security holders that was provided by the Debtor and listed on Exhibit A reveals that, to the best of my knowledge, P&D does not represent any equity security holder. Neither the Firm, nor any P&D attorney, is an equity security holder of the Debtor.

10. P&D's conflicts search of the directors, officers and executives of the Debtor, listed on Exhibit B, reveals that, to the best of my knowledge, P&D does not represent any director, officer and executive of the Debtor.

11. P&D's conflicts search of the Debtor's unsecured creditors, listed on Exhibit C, that P&D was able to locate reveals that, to the best of my knowledge, P&D's current representation of such entities is limited to matters unrelated to the Debtor as follows:

| Name of Creditors Searched | Name of Creditor that is a P&D Client | Brief Description of Representation |
|---|---|---|
| AT&T | AT&T | Regulatory, pricing and other competitive matters |
|  | AT&T Wireless Services | Town Zoning Approvals, for cellular towers and miscellaneous matters |
| Town of Foxborough, MA | Foxborough, MA | Bond Issuance by the Town |

Although P&D's representation of such creditors is wholly unrelated to the Debtor, to the extent the claims of either AT&T or the Town of Foxborough, the claims of AT&T and the Town of Foxborough appear to be less than $2,000 each, according to information provided by the Debtor), will necessitate the filing of objection or other litigation, P&D agrees that such matters should be handled by separate counsel.

12. P&D's conflicts search of the Debtor secured lenders, listed on Exhibit D, that P&D was able to locate using its reasonable efforts, reveals that, the best of my knowledge, P&D does not represent any secured lenders to the Debtor.

13.     The Debtor has retained and intends to retain various professionals during the pendency of these cases.  The Debtor has sought or is likely to seek, court authority to retain the following professionals in connection with these Chapter 11 cases:

    a.      Genovese, Joblove & Battista, P.A. ("GJB"), a professional association located in Miami, Florida, as general bankruptcy counsel.

    b.      White, White & Van Etten, LLP, located in Cambridge, Massachusetts, as special real estate counsel.

14.     P&D has appeared in bankruptcy cases and out-of-court restructurings where it represents either parties with similar interests or parties with adverse interests to those represented by GJB, all such matters have been wholly unrelated to the Debtor or this case.

15.     Because of the magnitude of the creditor list in these cases, it is possible that P&D may represent or may have represented other creditors of the Debtor but does not represent any such creditors in connection with this case.  With respect to the parties listed above, P&D has not and will not represent such parties in any matters related to the Debtor's bankruptcy case. Moreover, P&D presently or in the past has served as a professional person in other matters, wholly unrelated to the Debtor or these cases, in which many other attorneys, accountants and other professionals of the Debtor, creditors, or other parties in interest also may have served or serve as professional persons.  For example, it is my understanding that prior to the Petition Date, the Debtor engaged the accounting firm of Ernst & Young LLP ("E&Y").  P&D has been involved in numerous cases in which E&Y has also been involved, and where representation has been of parties both with similar and adverse interests.

16.     None of the representations described above are materially adverse to the interests of the estate or any class of creditors or interests.  Moreover, pursuant to Section 327(c) of the Bankruptcy Code, P&D is not disqualified from acting as counsel to the Debtor merely because it represents creditors in unrelated matters.

17.   P&D will periodically review its files during the pendency of this Chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. I shall amend this statement immediately upon my learning that (a) any of the within representations are incorrect or (b) there is any change of circumstances relating thereto. If any new relevant facts or relationships are discovered or arise, P&D will use reasonable efforts to identify such further developments and I will promptly file a supplement to this Affidavit as Bankruptcy Rule 2014(a) requires.

## Services to Be Rendered

18.   It is contemplated that P&D will render services as local bankruptcy counsel to the Debtor as needed throughout the course of these Chapter 11 cases. P&D will endeavor that the services to be provided (and described below) will not overlap with the services to be provided by GJB, although it is likely that both P&D and GJB will, to some extent, necessarily be involved in all matters relating to the Debtor's bankruptcy proceeding. In particular, it is anticipated that P&D will render the following legal services:

    a.  Advise the Debtor with respect to its powers and duties as debtor in possession in the continued management and operation of its business and property;

    b.  Represent the Debtor at all hearings and matters pertaining to its affairs as debtor and debtor-in-possession;

    c.  Attend meetings and negotiate with representatives of the Debtor's creditors and other parties-in-interest, as well as respond to creditor inquiries;

    d.  Take all necessary action to protect and preserve the Debtor's estates;

    e.  Prepare on behalf of the Debtor all necessary and appropriate motions, applications, answers, orders, reports and papers necessary to the administration of Debtor's estates;

    f.  Review applications and motions filed in connection with these cases;

g.  Negotiate and prepare on the Debtor behalf a plan of reorganization, disclosure statement, and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan;

h.  Advise the Debtor in connection with any potential sale of assets or business, or in connection with any strategic partnering;

i.  Review and evaluate the Debtor's executory contracts and unexpired leases and represent the Debtor in connection with the rejection, assumption or assignment of such leases;

j.  Consult with and advise the Debtor regarding labor and employment matters;

k.  Represent the Debtor in connection with any adversary proceedings or automatic stay litigation which may be commenced by or against the Debtor;

l.  Review and analyze various claims of the Debtor's creditors and the treatment of such claims and the preparation, filing or prosecution of any objections thereto; and

m.  Perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 case.

## **Professional Compensation**

21.     On or about October 15, 2003, the Debtor provided a payment to P&D in the amount of $25,000 for services rendered from October 6, 2003 through the Petition Date in preparation of the filing of the Petition and for services to be rendered after the Petition Date (the "Retainer"), all from working capital and/or borrowings under their existing prepetition credit facility.  Immediately prior to the Petition Date (from approximately October 6, 2003 through the Petition Date), P&D rendered services and incurred expenses on behalf of the Debtor with a value of approximately $18,004.50; such services included advice relating to the filing of the Petition, including the local rules applicable with respect thereto, the filing of the voluntary bankruptcy petition and the preparation and review of various so called "first day" pleadings. The balance of the retainer not used to pay prepetition fees and expenses (estimated to be

approximately $6,995.50) shall be held for services to be rendered after the Petition Date. Such balance of the Retainer will be held by P&D as security during the pendency of this case, and will be applied until fully utilized, in payment of services rendered, in accordance with any interim compensation procedures as approved by this Court, or to the extent authorized upon application to the Court for reimbursement of such fees and expenses.

22.     The Firm intends to apply for compensation for professional services rendered in connection with these Chapter 11 cases subject to approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, the Local Rules of Bankruptcy Procedure and orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that the Firm incurs in connection with these Chapter 11 cases. P&D will charge the Debtor its then current standard hourly rates. The Firm periodically reviews and adjusts its billing rates.

23.     It is the Firm's policy to charge its clients in all areas of practice for all expenses incurred in connection with the client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime support, filing and recording fees, telecopier use, postage, express mail, messenger services, computerized legal research services and other computer services, and costs for "working meals." Subject to this Court's approval, the Firm will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to the Firm's other clients.

24.     No promises have been received by the Firm nor by any member, counsel or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

25.     P&D further states pursuant to Federal Rule of Bankruptcy Procedure 2016(b) that it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the members, counsel and associates of P&D, or (b) any compensation another person or party has received or may receive.

26.     I have reviewed and am familiar with the provisions of MLBR 2016-1.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date:  October 22, 2003

Jeanne P. Darcey, Esquire    BBO#541835
Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA  02199-7613
(617) 239-0100
E-mail:  jdarcey@palmerdodge.com

9

**EXHIBIT A**

*Equity Security Holders of the Debtor*

PD Holdings:  Sole owner of stock in Possible Dreams, Ltd.

## EXHIBIT B

*Officers, Directors and Executives of the Debtor*

George Gebauer:  Board Member, Treasurer

Russell F. Peppet:  Board Member, Chief
Executive Officer

Dawn McCormack:  President

Wendy E. Boton:  Clerk

Michael Rizzo:  Chief Financial Officer

## EXHIBIT C

*Top Twenty Unsecured Creditors*

American Express
P.O. Box 360001
"Fort Lauderdale, FL 33336-0001"

Asian Gift Alliance Ltd.
Taipei World Trade Center
Room 5e19 5 Hsin-yi Road
"Taipei, TAIWAN "

B. L. Rogers
35 West Street
P. O. Box 432
"Northboro, MA 01532"

Bankers
P. O. Box 9209
"Uniondale, NY 11555-9209"

CFO Management Inc.
225 Fifth Avenue
POS01
"New York, NY 10010"

Cliff Price & Company
Dallas Trade Mart
2100 Stemmons Freeway Ste 1860
"Dallas, TX 75207"
Dennis Nemcek
30460 Greenland
"Livonia, MI 48154"

Donovan Herron Richardson & Co
1500 Atlanta Gift Mart
230 Spring Street
"Atlanta, GA 30303"

Federal Express Corp.
P.O. Box 1140 Dept a
"Memphis, TN 38101-1140"

Folkraft Co. Ltd
*8f-3 75 Hsin Tai Wu Rd Sec1*

12

Hsi Chih
"Taipei Hsien, TAIWAN "

Heartland
#4 Swanton Ct
"St Charles, MO 63304"

Ivystone Group
301 Commerce Drive
"Exton, PA 19341"

Joseph Schriver
6 Dover Farm Road
"Medfield, MA 02052"

King's Craft (H.K.) Ltd.
9f No. 205 Sec. 3
Pei-hsin Road Hsin-tien City
"Taipei Hsien 231, TAIWAN "

L.I.S.A.
55025 Coreglia Antelminelli
"Lucca, ITALY "

Plastics Plus Inc
1 Hatch Street
"Cumberland, RI 02864"

Saratoga Forwarding Co. Inc.
80 Everett Avenue
"Chelsea, MA 02150"

Security Capital Corp. Inc.
One Pickwick Plaza
Suite # 310
"Greenwich, CT 06830-2022"

Todays Treasures Inc.
4 Th Fl No. 11 Lane 329
Sec 1 Tung Hua S. Rd.
"Taipei, TAIWAN "

W.E. Andrews Co. Inc.
140 South Road
"Bedford, MA 01730"

## **EXHIBIT D**

### *Secured Lenders of the Debtor*

LaSalle Business Credit, Inc.

Bankers/Softech Division of EAD Leasing
Corp.

Nations Credit Commercial Corporation

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:                                                      )<br>                                                                )<br>          POSSIBLE DREAMS, LTD.,      )<br>                                                                )<br>                                          Debtor.         )<br>                                                                ) | Chapter 11<br>Case No. 03-_____-___ |

**ORDER ON DEBTOR'S APPLICATION**
**FOR AUTHORITY AND RETAIN JEANNE P. DARCEY**
**AND PALMER & DODGE LLP AS LOCAL COUNSEL FOR THE DEBTOR**

This matter came before this Court upon the **Debtor's Application for Authority to Employ and Retain Jeanne P. Darcey and Palmer & Dodge LLP as Local Counsel for the Debtor,** dated October 22, 2003 (the "Motion"), filed on behalf of Possible Dreams, Ltd., the debtor herein (the "Debtor") and upon the Affidavit of Russell F. Peppet in Support of the Chapter 11 Petition and First Day Motions (the "Peppet Affidavit"). Upon consideration of the Motion and the Peppet Affidavit, and upon the record herein and after due deliberation thereon, the Court hereby finds that proper and adequate notice having been given, and no further notice is necessary and the relief requested in the Motion should be granted. Accordingly, it is hereby:

**ORDERED AND ADJUDGED** as follows:

1.       The Motion is GRANTED;

2.       The Debtor is hereby authorized to employ and retain Jeanne P. Darcey and Palmer & Dodge LLP as its local counsel.

Signed this ___ day of October, 2003.

_____

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

OCT 22'03 PM 4:07 USB

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **POSSIBLE DREAMS LTD.,** | ) | **Case No. 03-_____ - ___** |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**CERTIFICATE OF SERVICE**

I, Judy A. Groves, hereby certify that on the date written below I caused to be served to the persons on the attached Master Service List via Overnight U.S. Mail or, if indicated, by email, a true copy of the following:

    (i)    *Debtor's Application for Authority to Employ and Retain Jeanne P. Darcey and Palmer & Dodge LLP as Local Counsel for the Debtor; and*

Dated: October 22, 2003

Judy A. Groves (BBO No. 647160)
Palmer & Dodge LLP
111 Huntington Ave.
Boston, MA  02199-7613
(617) 239-0100
(617) 227-4420 (fax)

## MASTER SERVICE LIST
### POSSIBLE DREAMS LTD.

**DEBTOR**
Possible Dreams, Ltd.
Attn: Mike Rizzo
Six Perry Drive
Foxboro, MA 02035

**GOVERNMENTAL ENTITIES**
Eastern Division of the District of
Massachusetts
Office of the U.S. Trustee
10 Causeway Street, Room 1184
Boston, MA 02222-1043

Commonwealth of Massachusetts
MA Deptartment of Revenue
P O Box 7046
Boston, MA 02204

Town of Walpole
Finance Department
P. O. Box 387
Walpole, MA 02081-0387

Massachusetts Department Of Revenue
Litigation Bureau - Bankruptcy Unit
P.O. Box 55484 - 51 Sleeper St.
Boston, MA 02205

Internal Revenue Service
Special Procedures Function STOP 20800
P.O. Box 9112 - JFK Building
Boston, MA 02203

**SPECIAL COUNSEL**
Diana C. Van Etten, Esq.
White White & Van Etten LLP
55 Cambridge Parkway
Cambridge, MA 02142

**TOP 20 UNSECURED CREDITORS**
Folkraft Co. Ltd
8F-3, 75 Hsin Tai Wu Rd Sec1
Hsi Chih
Taipei Hsien, TAIWAN

Asian Gift Alliance Ltd.
Taipei World Trade Center
Room 5e19, 5 Hsin-Yi Road,
Taipei, TAIWAN

Security Capital Corp., Inc.
One Pickwick Plaza
Suite # 310
Greenwich, CT 06830-2022

W.E. Andrews Co., Inc.
140 South Road
Bedford, MA 01730

Saratoga Forwarding Co., Inc.
80 Everett Avenue
Chelsea, MA 02150

Joseph Schriver
6 Dover Farm Road
Medfield, MA 02052

Todays Treasures Inc.
4 Th Fl No. 11, Lane 329
Sec 1 Tung Hua S. Rd.
Taipei, TAIWAN

Federal Express Corp.
Po Box 1140 Dept A
Memphis, TN 38101-1140

L.I.S.A.
55025 Coreglia Antelminelli
Lucca, ITALY

# MASTER SERVICE LIST
## POSSIBLE DREAMS LTD.

Ivystone Group
301 Commerce Drive
Exton, PA 19341

Zemon Inc
6th Fl. No. 56, Sec. 4
Nanking East Road
Tapiei, TAIWAN

King's Craft (H.K.) Ltd.
9F, No. 205, Sec. 3
Pei-hsin Road Hsin-tien City,
Taipei Hsien, 231 TAIWAN

CFO Management Inc.
225 Fifth Avenue
Pos01
New York, NY 10010

Daly.commerce
1351 South County Trail
East Greenwich, RI 02818

Donovan Herron Richardson & Co
1500 Atlanta Gift Mart
230 Spring Street
Atlanta, GA 30303

Cliff Price & Company
Dallas Trade Mart
2100 Stemmons Freeway Ste 1860
Dallas, TX 75207

B. L. Rogers Inc.
35 West Street
P. O. Box 432
Northboro, MA 01532

Kingsweet Enterprises Co
3F-14, No. 9
San-ming Road
Taipei, TAIWAN

Greeting International Inc.
4th Fl, No. 51-1, Lane 35,
Jihu Rd, Neihu Chiu
Taipei, TAIWAN

Frank Maxwell & Associates
The Gift Center Showroom 557
888 Brannan Street
San Francisco, CA 94103

## LA SALLE BUSINESS CREDIT, LLC

Michael A. Kurshuk
First Vice President
LaSalle Business Credit LLC
565 Fifth Avenue, 27th Floor
New York, NY 10017

Raffi Shirinyan
LaSalle Business Credit, LLC
450 N. Brand Blvd., Suite 950
Glendale, CA 91203

Lowell A. Citron, Esq.
Loeb & Loeb LLP
345 Park Ave
New York, NY 10154

## WILLITTS DESIGNS INTERNATIONAL, INC.

Joseph Walsmith
Chief Executive Officer
1129 Industrial Avenue,
Petaluma, CA 94952

Peter A. Whitman
Ritchey Fisher Whitman & Klein,
A Professional Corporation
1717 Embarcadero Road, P.O. Box 51050
Palo Alto, California 94303

Mike C. Buckley
Reed Smith Crosby Heafey LLP
1999 Harrison Street
Oakland, California 94612-3572