**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

OCT 22 '03 PM 4:05 USB

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **POSSIBLE DREAMS LTD.,** | ) | **Case No. 03-_____ - ___** |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**APPLICATION OF DEBTOR-IN-POSSESSION FOR RETENTION AND**
**EMPLOYMENT OF PAUL J. BATTISTA AND THE LAW FIRM OF GENOVESE**
**JOBLOVE & BATTISTA, P.A., AS COUNSEL FOR DEBTOR-IN-POSSESSION**

Possible Dreams, Ltd., the Chapter 11 debtor and debtor-in-possession herein (the "Debtor"),

respectfully requests the entry of an order authorizing the retention and employment of Paul J.

Battista and the law firm of Genovese Joblove & Battista, P.A. ("GJB") <u>nunc pro tunc</u> to the Petition

Date, to represent the Debtor as its general bankruptcy counsel in this Chapter 11 case.[1]  In support

of this Application, the Debtor relies on the Affidavit of Paul J. Battista (the "Battista Affidavit")

submitted herewith and the Affidavit of Russell F. Peppet in Support of Chapter 11 Petition and First

Day Motions filed contemporaneously herewith.  In further support of this Application, the Debtor

respectfully represents as follows:

**INTRODUCTION**

A.    **Chapter 11 Filing.**

---

[1] Simultaneously with the filing of the within Application, the Debtor is also filing an
application to employ Palmer & Dodge, LLP as co-counsel to GJB in Massachusetts.  In addition, Judy
A. Groves of Palmer & Dodge, LLP is simultaneously filing motions to seek the admission of Paul J.
Battista and Glenn D. Moses of GJB into this Court *pro hac vice* for purposes of this Chapter 11 case.

1

1.      On October 22, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Since that time, the Debtor has operated as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  The Debtor operates from its principal place of business located at 6 Perry Drive, Foxboro, Massachusetts 02035.

2.      As of the date hereof, no creditors' committee has been appointed in this case.  In addition, no trustee or examiner has been appointed.

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      The statutory predicates for the relief requested herein are § 327(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure.

**B.      Background and Business Operations**

5.      The Debtor is a Delaware corporation that is engaged in the business of manufacturing, marketing and distributing gift and collectible items.  Specifically, the Debtor is a collectible and giftware company known for its branded line of Clothtique®, Flights of Fancy®, and Celtic Collection figurines and other specialty giftware products.  The Debtor designs, imports and distributes its product throughout the United States.  The Debtor sells its products through a large and diverse network composed of independent gift and collectible retailers, premier department stores, selected catalog retailers and other electronic and retail channels.

6.      The Clothtique® line consists of hand crafted, collectible figures dressed in a combination of stiffened cloth, ceramic and other materials, and primarily featuring Santa Claus in a variety of costumes, situations and themes.  Given the nature of the Debtor's business, its sales

2

are highly seasonal, with a large volume of sales typically occurring prior to the winter holiday season.

**C.    Proposed Purchase and Sale of the Debtor's Assets.**

**(I) Sale of Business (Non-Real Estate) Assets.**

7.      As a result of unfortunate economic conditions in late 2002 and into 2003, as well as an expected shortage of available cash to timely satisfy its anticipated liabilities and obligations, the Debtor decided that it was in its best interest and the best interests of its creditors and other stakeholders to sell all or substantially all of its assets.  As such, prior to the Petition Date, the Debtor began to market its assets for sale.  Such efforts resulted in an Agreement for the Purchase and Sale of Assets, dated October 21, 2003 (the "Purchase Agreement"), by and between the Debtor and Willitts Designs International, Inc. ("Willitts").  Willitts is not related to the Debtor or any of its principals.  Pursuant to the terms of the Purchase Agreement, the Debtor proposes to sell all of its non-real estate assets, including without limitation, inventory and accounts receivables (the "Assets") to Willitts for approximately $6.0 million, subject to higher or better offers.

8.      Pursuant to the terms of the Purchase Agreement, Willitts requires that the Debtor seek approval of the sale of the Assets to Willitts pursuant to Sections 363(b), 363(f) and 365 of the Bankruptcy Code.  The Debtor believes that the sale of the Assets to Willitts will maximize the value of such Assets for the benefit of all creditors of the estate. As such, the Debtor is contemporaneously filing a motion to approve the sale of the Assets to Willitts pursuant to Sections 363(b), 363(f) and 365 of the Bankruptcy Code,  which sale is subject to higher and better offers and the approval of this Court.  The Debtor is also filing a motion seeking approval of separate bidding procedures and bid protections in connection therewith.

3

9.    Due to the highly seasonal nature of the Debtor's business, Willitts is only willing to consummate the purchase of the Assets and pay the purchase price provided for in the Purchase Agreement if the closing on the sale of the Assets occurs on or prior to November 30, 2003.  As such, one of the conditions precedent to the sale of the Assets to Willitts is that the motion to approve the sale be filed immediately after the filing of the within Chapter 11 case and that the closing thereon occur on or before November 30, 2003.

**(II)  Sale of Real Estate.**

10.    Pursuant to the Purchase Agreement, Willitts is not acquiring the Debtor's real estate located at 6 Perry Drive, Foxboro, Massachusetts (the "Foxboro Property").  As such, the Debtor has been simultaneously marketing the Foxboro Property for sale.  The Debtor has received a written offer, dated September 10, 2003, for the purchase of the Foxboro Property from James Greene and Likarr, Inc., who are third parties unrelated to Willitts or the Debtor.  The Debtor is currently negotiating the final terms of a proposed purchase and sale agreement with Mr. Greene and Likarr, Inc. (the "Real Estate Agreement").  The current terms of the Real Estate Agreement propose a closing on December 1, 2003, with the Debtor leasing the Foxboro Property for the month of December and having the right to lease the Foxboro Property during January 2004 so as to enable the Debtor to consummate the sale of the Assets to Willitts or another buyer who submits a higher or better offer for the Assets.  Upon finalizing and executing the Real Estate Agreement, which the Debtor expects to be within the next several days, the Debtor will file a motion to approve the sale of the Foxboro Property pursuant to the terms of the Real Estate Agreement  (the "Real Estate Sale Motion").

11.    The Debtor anticipates that the aggregate net proceeds from the sale of the Assets to

4

Willitts and the sale of the Foxboro Property to James Greene and Likarr, Inc. will be sufficient to pay in full the secured debt on the Assets and Foxboro Property owed by the Debtor to LaSalle Business Credit, LLC (successor by merger to LaSalle Business Credit, Inc.) described below and to produce a surplus for ultimate distribution to unsecured creditors in this Chapter 11 case.

**D.**    **Secured Claims of LaSalle Business Credit, LLC.**

12.    On or about December 31, 2001, the Debtor entered into a Loan and Security Agreement (the "Loan Agreement") with LaSalle Business Credit, LLC (successor by merger to LaSalle Business Credit, Inc.), as agent and lender (the "Lender"). Pursuant to the Loan Agreement, The Lender made a series of loans and advances to the Debtor of up to $16 million. Such loans consisted of (i) a revolving line of credit in the maximum amount of $12.7 million (the "Line of Credit"), and (ii) two term loans, one in the original principal amount of $1.5 million ("Term Loan A") and the second in the original principal amount of $1.8 million ("Term Loan B").

13.    In connection with the Line of Credit, the Debtor established a "lockbox" account under the Lender's control and  directed its account debtors to make all payments to the lockbox. Upon receipt of such payments into the lockbox, the Lender would sweep such funds and apply them to reduce the then outstanding balance of the Line of Credit. Thereafter, the Lender would make advances to the Debtor under the Line of Credit (subject to certain borrowing base limitations) in order to enable the Debtor to meet its obligations. As of October 21, 2003, a total of $6,304,102.33 was due under the Line of Credit, $1,237,500 due under Term Loan A and $225,000 due under Term Loan B.

14.    In order to secure all of its obligations under the Loan Agreement, the Debtor granted a first priority lien and security interest in all of its assets, including, without limitation, goods,

inventory, accounts, receivables, cash, cash collateral, investment property, chattel paper, instruments, documents, letter of credit rights, supporting obligations, deposit accounts, general intangibles and customer lists, to the Lender, as well as all products and proceeds of any of the foregoing and books and records relating to any of the foregoing and the Debtor's business. In addition, to secure all of its obligations under the Loan Agreement, the Debtor granted a first mortgage lien to the Lender on the Foxboro Property. All of the assets described in this paragraph are hereinafter referred to as the "Collateral."

## RELIEF REQUESTED

15.    By this Application, the Debtor seeks to employ and retain Paul J. Battista, Esq. and the law firm of GJB as its restructuring and bankruptcy counsel with regard to the filing of this Chapter 11 petition and the prosecution of this Chapter 11 case. Accordingly, the Debtor respectfully requests entry of an order pursuant to Section 327(a) of the Bankruptcy Code authorizing it to employ and retain Paul J. Battista, Esq. and the law firm of GJB as its attorneys under a general retainer to perform the legal services that will be necessary during the Chapter 11 case as more fully described below.

16.    Prior to the commencement of this Chapter 11 case, the Debtor sought the services of GJB with respect to, among other things, advice regarding restructuring matters in general, and preparation for the potential commencement and prosecution of a Chapter 11 case for the Debtor. The Debtor believes that continued representation by their pre-petition restructuring counsel, GJB, is critical to the Debtor's efforts herein because GJB has extensive experience and expertise in complex commercial reorganization cases and has become familiar with the Debtor's business, legal and financial affairs. Accordingly, GJB is well-suited to guide the Debtor through the Chapter 11

6

process.

17.    The Debtor has selected the firm of GJB as its attorneys because of the firm's experience with and knowledge of the Debtor and its business, as well as its extensive experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

18.    The Debtor desires to employ the firm of GJB under a general retainer because of the extensive legal services that will be required in connection with the Chapter 11 case and the firm's familiarity with the business of the Debtor.

## SERVICES TO BE RENDERED

19.    The services of GJB are necessary to enable the Debtor to execute faithfully their duties as a debtor-in-possession. Subject to order of this Court, the law firm of GJB will be required to render, among others, the following services to the Debtor:

(a)    advise the Debtor with respect to its powers and duties as a debtor-in-possession in the continued management and operation of its business and properties;

(b)    attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult on the conduct of the case, including all of the legal and administrative requirements of operating in Chapter 11;

(c)    advise the Debtor in connection with any contemplated sales of assets or business combinations, including the negotiation of asset, stock purchase, merger or joint venture agreements, formulate and implement bidding procedures, evaluate competing offers, draft appropriate corporate documents with respect to the proposed sales, and counsel the Debtor in connection with the closing of such sales;

(d)    advise the Debtor in connection with post-petition financing and cash collateral arrangements, provide advice and counsel with respect to pre-petition financing arrangements, and provide advice to the Debtor in connection with the emergence financing and capital structure, and negotiate and draft documents relating thereto;

7

(e) advise the Debtor on matters relating to the evaluation of the assumption, rejection or assignment of unexpired leases and executory contracts;

(f) provide advice to the Debtor with respect to legal issues arising in or relating to the Debtor's ordinary course of business including attendance at senior management meetings and meetings of the board of directors;

(g) take all necessary action to protect and preserve the Debtor's estate, including the prosecution of actions on its behalf, the defense of any actions commenced against those estates, negotiations concerning all litigation in which the Debtor may be involved and objections to claims filed against the estates;

(h) prepare on behalf of the Debtor all motions, applications, answers, orders, reports and papers necessary to the administration of the estates;

(i) negotiate and prepare on the Debtor's behalf plan(s) of reorganization, disclosure statement(s) and all related agreements and/or documents, and take any necessary action on behalf of the Debtor to obtain confirmation of such plan(s);

(j) attend meetings with third parties and participate in negotiations with respect to the above matters;

(k) appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtor's estate before such courts and the U.S. Trustee; and

(l) perform all other necessary legal services and provide all other necessary legal advice to the Debtor in connection with this Chapter 11 case.

17. The firm of GJB is willing to act on behalf of the Debtor as set forth above.

## DISINTERESTEDNESS OF PROFESSIONALS

18. Except as set forth in the Battista Affidavit, to the best of the Debtor's knowledge, the shareholders, partners and associates of the firm of GJB (a) do not have any connection with the Debtor, its affiliates, its creditors, the U.S. Trustee, any person employed in the office of the U.S. Trustee, or any other party in interest, or their respective attorneys and accountants; (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code; and (c)

do not hold or represent any interest adverse to the Debtor's estate.

19.   More specifically, as set forth in the Battista Affidavit:

(a)   Neither GJB nor any attorney at the firm holds or represents an interest adverse to the Debtor's estate.

(b)   Neither GJB nor any attorney at the Firm is or was a creditor, an equity holder, or an insider of the Debtor, except that GJB previously rendered legal services to the Debtor for which it was compensated.

(c)   Neither GJB nor any attorney at the firm is or was an investment banker for any outstanding security of the Debtor.

(d)   Neither GJB nor any attorney at the firm is or was, within three years before the filing of the Debtor's Chapter 11 case, an investment banker for any security of the Debtor, or an attorney for an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

(e)   Neither GJB nor any attorney at the firm is or was, within two years before the Petition Date, a director, officer or employee of the Debtor or of an investment banker of the Debtor.

(f)   GJB does not have an interest materially adverse to the interests of the Debtor's estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or an investment banker specified in the foregoing paragraphs, or for any other reason.

## PROFESSIONAL COMPENSATION

20.   On or about September 23, 2003, the Debtor paid an initial retainer to GJB in the amount of $25,000.00 for professional services rendered, and to be rendered, and charges and disbursements incurred, and to be incurred, by GJB on behalf of the Debtor in connection with the preparation and prosecution of the within Chapter 11 case (the "Initial Retainer").

21.   In addition, on October 10, 2003, GJB received a supplemental retainer from the Debtor in an amount equal to $75,000.00 for services rendered and to be rendered in connection with and in anticipation of the Chapter 11 filing (collectively with the Initial Retainer, the "Retainer").

9

On October 20, 2003, GJB invoiced the Debtor the sum of $30,143.55 for pre-petition services rendered, which invoice was applied to reduce the Retainer.

22.    In addition to such invoice, GJB will apply the Retainer to pay any fees, charges and disbursements which remain unpaid as of the Petition Date and will retain the remainder of the Retainer to be applied to any fees, charges and disbursements incurred during this reorganization case, which post-petition fees and expenses will be subject to review by and approval of this Court. The Debtor requests that GJB not be required to deposit the Retainer in a segregated bank account.

23.    GJB intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this Chapter 11 case in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court. GJB will seek compensation for the services of each attorney and paraprofessional acting on behalf of the Debtor in this case at the then-current rate charged for such services.

24.    Consistent with the firm's policy with respect to its other clients, GJB will continue to charge the Debtor for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, computerized research, messengers, couriers, postage, witness fees and other fees related to trials and hearings.

25.    GJB has agreed to accept as compensation such sums as may be allowed by the Court on the basis, among other, of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estate, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance and nature of the problems, issues or tasks addressed in this case.

10

26.    Other than as set forth herein and in the Battista Affidavit, no arrangement is proposed between the Debtor and GJB for compensation to be paid in these cases, and no agreement or understanding exists between GJB and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case.

27.    No previous request for the relief sought in this Application has been made to this Court or any other Court.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order (i) authorizing the Debtor's retention of Paul J. Battista, Esq. and the law firm of GJB upon the terms outlined in this Application, nunc pro tunc to the Petition Date; and (ii) granting such other and further relief as is just and proper.

Respectfully Submitted.

POSSIBLE DREAMS, LTD.

By: _____
     Russell F. Peppet,
     Chairman and Chief Executive Officer

11

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

In re:                                              CASE NO. 03-

POSSIBLE DREAMS, LTD.,                              Chapter 11

            Debtor.
_____/

**AFFIDAVIT OF PAUL J. BATTISTA, ON
BEHALF OF GENOVESE JOBLOVE & BATTISTA, P.A.,
COUNSEL FOR DEBTOR-IN-POSSESSION**

STATE OF FLORIDA          )
                          ) ss:
COUNTY OF MIAMI-DADE      )

I, Paul J. Battista, being duly sworn, deposes and says:

1.      I am an attorney and shareholder of the law firm of Genovese Joblove & Battista,

P.A. ("GJB"). GJB maintains offices for the practice of law at 3600 Bank of America Tower, 100

Southeast Second Street, Miami, Florida 33131. I am familiar with the matters set forth herein and

make this Affidavit in support of the Application of Debtor-In-Possession for Retention and

Employment of GJB as Counsel for Debtor-In-Possession (the "Application").

2.      In support of the Application, I disclose the following:

        a.      Unless otherwise stated, this Affidavit is based upon facts of which I have

personal knowledge.

        b.      In preparing this Affidavit, I have reviewed the list of all creditors and equity

security holders of the Debtor provided to us by the Debtor. GJB maintains a computerized conflicts

check system. GJB has compared the information obtained thereby with the information contained

1

in its client and adverse party conflict check system. The facts stated in this Affidavit as to the relationship between GJB and the Debtor, the Debtor's creditors, the United States Trustee, other persons employed by the Office of the United States Trustee, and those persons and entities who are defined as disinterested persons in Section 101(14) of the Bankruptcy Code, are based on the results of my review of GJB's conflict check system. Based upon such search, GJB does not represent any entity in any matter involving or adverse to the Debtor or which would constitute a conflict of interest or impair the disinterestedness of GJB in respect of its representation of the Debtor herein.

3.     GJB's client and adverse party conflicts check system is comprised of records regularly maintained in the course of business by GJB, and it is the regular practice of GJB to make and maintain these records. The system reflects entries that are noted at the time the information becomes known by persons whose regular duties include recording and maintaining this information. I am one of the persons who is responsible for the supervision of the department of GJB which keeps this system up-to-date, and I regularly use and rely upon the information contained in the system in the performance of my duties with GJB and in my practice of law.

4.     GJB neither holds nor represents any interest adverse to the Debtor and is a "disinterested person" within the scope and meaning of Section 101(14) of the Bankruptcy Code. I shall amend this Affidavit immediately upon my learning that (i) any of the within representations are incorrect of (ii) there is any change of circumstances relating thereto.

5.     A search of GJB's conflicts check system revealed the following connections with this case, none of which in my view impairs my or GJB's disinterestedness or constitutes any conflict of interest:

(A)     GJB represents Florida Crane, LLC in a Chapter 11 case (03- 21179-BKC-RBR)

2

pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Raymond B. Ray. The following creditors are also creditors of the Debtor herein: *American Express, AT&T Corporation and Pitney Bowes.*

(B)    GJB represents MARS, Inc. and fourteen (14) of its affiliate companies (collectively "MARS") in a Chapter 11 case (02-27298-BKC-PGH through 02-27312-BKC-PGH) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Paul G. Hyman. The following creditors are also creditors of the Debtor herein: *American Express, AT&T Corporation, Pitney Bowes and United Parcel Service.*

(C)    GJB represents Systech Retail Systems (U.S.A.), Inc. and ten (10) of its affiliates companies (collectively "Systech") in a Chapter 11 case (03-00141-BKC-ATS through 03-00151-BKC-ATS) pending in the United States Bankruptcy Court for the Eastern District of North Carolina before the Honorable A. Thomas Small. The following creditors are also creditors of the Debtor herein: *American Express, AT&T Corporation, Dun & Bradstreet, Pitney Bowes and United Parcel Service.*

(D)    GJB represents Choice Restaurant Acquisition Ltd., d/b/a Choice Food Service, Equipment, Furnishing and Supplies, Choice Restaurant Equipment and Supplies, and Choice Restaurant Equipment ("Choice") in a Chapter 11 case (03-30936-BKC-SHF) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Steven H. Friedman. The following creditors of Choice are also creditors of the Debtor herein; *American Express, AT&T Corporation and Pitney Bowes.*

(E)    GJB represents the Liquidating Trustee, Soneet Kapila, for the estate of Bye Bye Now.com, Inc. and its affiliates ("BBN") in a Jointly Administered Chapter 11 case (01-20536-BKC-RBR through 01-20542-BKC-RBR) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Raymond B. Ray. The following creditors of BBN are also creditors of the Debtor herein; *American Express, AT&T Corporation, Dun & Bradstreet, Pitney Bowes and United Parcel Service.*

(F)    GJB represents Bobby Allison Wireless, Inc. ("BAW") in a Chapter 11 case (01-29228-BKC-PGH) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Paul G. Hyman. The following creditors of BAW are also creditors of the Debtor herein; *American Express, AT&T Corporation, UPS, and Verizon.*

(G)    GJB represents Caiman Distribution Corporation and Caiman Records America ("Caiman") in a Jointly Administered Chapter 11 case (02-13218-BKC-AJC and 02-13220-BKC-AJC) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable A. Jay Cristol. The following creditors of Caiman are also creditors of the Debtor herein; *American Express, AT&T Corporation, and Verizon.*

(H)    GJB represents Ortho-Associates, P.A. ("Ortho") in a Chapter 11 case (02-26581-

3

BKC-RBR) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Raymond B. Ray. The following creditors of Ortho are also creditors of the Debtor herein; *American Express, AT&T Corporation and UPS.*

(I)     GJB represents, as special counsel, the Chapter 7 Trustee of Abraham David Gosman ("Gosman") in a Chapter 7 case (01-30953-BKC-PGH) pending in the United States Bankruptcy Court for the Southern District of Florida before the Honorable Paul G. Hyman. The following creditors of Gosman are also creditors of the Debtor herein; *AT&T Corporation and United Parcel Service.*

(J)     GJB also represents several Chapter 7 trustees in more than 100 chapter 7 bankruptcy cases pending in the Southern District of Florida, the majority of which cases are substantially complete. Due to the status and voluminous nature of such cases, GJB has not compared the creditors in such cases with the creditors of the Debtor. However, GJB is not presently aware of any connections that need to be disclosed in respect thereof and represents that if GJB becomes aware of the existence of such connections, then a supplemental affidavit will be filed.

(K)     Mr. Battista, while at a law firm prior to his association with GJB, represented a Chapter 11 debtor known as Atlas Environmental, Inc. and several of its affiliates (collectively, "Atlas"), which debtors were the subject of a Chapter 11 proceeding in the Southern District of Florida. Mr. Russell F. Peppet, who is the Debtor's Chairman and Chief Executive Officer, was a consultant to Atlas during Atlas' bankruptcy proceedings. Mr. Battista's connection to the Atlas bankruptcy proceedings terminated approximately five years ago. In addition, and as set forth above, Mr. Battista and GJB represent Systech Retail Systems (U.S.A.), Inc. and ten (10) of its affiliates companies (collectively "Systech") in a Chapter 11 case (03-00141-BKC-ATS through 03-00151-BKC-ATS) pending in the United States Bankruptcy Court for the Eastern District of North Carolina before the Honorable A. Thomas Small. Mr. Peppet served as a financial advisor to one of Systech's secured creditors in those Chapter 11 cases. Mr. Peppet is also a member of Systech's board of directors. Neither GJB nor Mr. Battista represented Mr. Peppet individually in either of such cases, and have never represented Mr. Peppet in any other matter.

6.     Neither I nor GJB has or will represent any other entity in connection with this case, and neither I nor GJB will accept any fee from any other party or parties in this case, except the Debtor-In-Possession, unless otherwise authorized by the Court.

7.     Pursuant to 11 U.S.C. § 329(a), GJB discloses that all services rendered by GJB and compensation received from the Debtor have been in contemplation of and in connection with the filing of the voluntary Chapter 11 case and administration of this Chapter 11 case. On or about

4

September 23, 2003, the Debtor paid an initial retainer to GJB in the amount of $25,000.00 for professional services rendered, and to be rendered, and charges and disbursements incurred, and to be incurred, by GJB on behalf of the Debtor in connection with the preparation and prosecution of the within Chapter 11 case (the "Initial Retainer"). In addition, on October 10, 2003, GJB received a supplemental retainer from the Debtor in an amount equal to $75,000.00 for services rendered and to be rendered in connection with and in anticipation of the Chapter 11 filing (collectively with the Initial Retainer, the "Retainer"). On October 20, 2003, GJB invoiced the Debtor the sum of $30,143.55 for pre-petition services rendered, which invoice was applied to reduce the Retainer.

8.      The professionals' fees and costs to be incurred by GJB in the course of its representation of the Debtor in this case shall be subject in all respects to the application and notice requirement of 11 U.S.C. §§ 330 and 331 and Fed. R. Bank. P. 2014 and 2016.

9.      The hourly rates for the attorneys at GJB range from $150 to $450 per hour. The hourly rates of Paul J. Battista and Glenn D. Moses, the attorneys who will be principally working on this case, are $365 and $295, respectively. The hourly rates for the associate attorneys who will work on this case range from $150 to $225. The hourly rates for the paralegals and legal assistants at GJB range from $75 to $100. GJB reserves the right to increase its hourly rates in accordance with its normal and customary business practices.

10.     There is no agreement of any nature as to the sharing of any compensation to be paid to GJB, except between the attorneys of GJB. No promises have been received by GJB, nor any member or associate thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

11.     No attorney at GJB holds a direct or indirect equity interest in the Debtor, including

5

stock or stock warrants, or has a right to acquire such an interest.

12.     No attorney at GJB is or has served as an officer, director or employee of any of the Debtor within two years before the Petition Date.

13.     No attorney at GJB is in control of any of the Debtor or is a relative of a director, officer or person in control of any of the Debtor.

14.     No attorney at GJB is a general or limited partner of a partnership in which any of the Debtor is also a general or limited partner.

15.     No attorney at GJB is or has served as an officer, director or employee of a financial advisor that has been engaged by any of the Debtor in connection with the offer, sale or issuance of a security of any of the Debtor, within two years before the Petition Date.

16.     No attorney at GJB has represented a financial advisor of any of the Debtor in connection with the offer, sale or issuance of a security of any of the Debtor within three years before the Petition Date.

17.     No attorney at GJB has any other interest, direct or indirect, that may be affected by the proposed representation.

18.     Except as set forth herein, no attorney at GJB has had or presently has any connection with the above-captioned Debtor or the estate on any matters in which GJB is to be engaged, except that I, GJB and our attorneys (i) may have appeared in the past and may appear in the future in other cases in which one or more of said parties may be involved; and (ii) may represent or may have represented certain of the Debtor's creditors in matters unrelated to this case.

19.     I have reviewed and am familiar with the provisions of MLBR 2016-1.

20.     I declare under penalty of perjury that the foregoing is true and correct.

6

FURTHER, AFFIANT SAYETH NOT.

_____
PAUL J. BATTISTA, ESQ.

SWORN TO AND SUBSCRIBED before me this $20$ day of October 2003.



NOTARY PUBLIC, STATE OF FLORIDA
AT LARGE

Print Name: _HEAN MARIE WILSON_

Commission No._____
Commission Expires:_____

JEAN MARIE WILSON
MY COMMISSION # CC 867341
EXPIRES: October 25, 2003
Bonded Thru Notary Public Underwriters

OCT 22'03 PM 4:05 USB

7

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

In re:                                                            CASE NO. 03-

POSSIBLE DREAMS, LTD.,                                            Chapter 11

                    Debtor.
_____/

**ORDER PURSUANT TO 11 U.S.C. § 327(a)**
**AUTHORIZING THE RETENTION AND EMPLOYMENT**
**OF PAUL J. BATTISTA AND THE LAW FIRM OF GENOVESE**
**JOBLOVE & BATTISTA, P.A. AS COUNSEL FOR DEBTOR-IN POSSESSION**

THIS CAUSE came before this Court upon the application (the "Application") of Possible

Dreams, LTD., as debtor and debtor-in-possession in the above-captioned case (the "Debtor"), for

the entry of an order, pursuant to 11 U.S.C. § 327(a), authorizing the Debtor to retain and employ

Paul J. Battista, Esq. and the law firm of Genovese Joblove & Battista ("GJB") under a general

retainer as its attorneys in its Chapter 11 case; upon the Affidavit of Russell F. Peppet in Support of

Chapter 11 Petition and First Day Motions (the "Peppet Affidavit") and the Affidavit of Paul J.

Battista (the "Battista Affidavit"), a member of GJB; and it appearing to the Court that the

representations made in the Application, the Peppet Affidavit and the Battista Affidavit that said

attorneys represent no interest adverse to any of the Debtor's estate; that they are disinterested

persons as that term is defined under section 101(14) of the Bankruptcy Code, as modified by section

1107(b) of the Bankruptcy Code; that their employment is necessary and would be in the best

interests of the Debtor's estate; that all connections to the Debtor's estate have been sufficiently

disclosed; that proper and adequate notice has been given and that no other or further notice is

necessary; upon the record herein; and after due deliberation thereon; the relief should be granted

1

as set forth below. Accordingly, it is

ORDERED AND ADJUDGED as follows:

1.      The Application is GRANTED;

2.      Pursuant to Section 327(a) of the Bankruptcy Code, the Debtor, as a debtor-in

possession, is authorized to employ and retain Paul J. Battista, Esq. and the law firm of GJB as its

attorneys in this Chapter 11 case under a general retainer, nunc pro tunc to the Petition Date, to

perform the services set forth in the Application.

3.      GJB shall be compensated in accordance with the procedures set forth in Sections 330

and 331 of the Bankruptcy Code and such Bankruptcy Rules and Local Rules as may then be

applicable, from time to time, and such procedures as may be fixed by Order of this Court.

4.      GJB is authorized to apply the Retainer (as such term is defined in the Application)

to pay any fees, charges and disbursements relating to services rendered to the Debtor prior to the

Petition Date (as such term is defined in the Application) that remain unpaid as of such date.

Further, GJB is not required to segregate the balance of the Retainer in a separate bank account.

**DONE AND ORDERED** in the District of Massachusetts this ____ day of October, 2003.


_____

UNITED STATES BANKRUPTCY JUDGE


Copy to:
Jeanne Darcey, Esq.
[Attorney Darcey shall forward a conformed copy of this Order to all interested parties.]

2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

OCT 22'03 PM 4:04 USB

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **POSSIBLE DREAMS LTD.,** | ) | **Case No. 03-_____ - ___** |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## CERTIFICATE OF SERVICE

I, Judy A. Groves, hereby certify that on the date written below I caused to be served to the persons on the attached Master Service List via Overnight U.S. Mail or, if indicated, by email, a true copy of the following:

(i)   *Application of Debtor-in-Possession for Retention and Employment of Paul J. Battista and the Law Firm of Genovese, Joblove & Battista, P.A. as Counsel for Debtor-in- Possession*

Dated: October 22, 2003

Judy A. Groves (BBO No. 647160)
Palmer & Dodge LLP
111 Huntington Ave.
Boston, MA  02199-7613
(617) 239-0100
(617) 227-4420 (fax)

## MASTER SERVICE LIST
### POSSIBLE DREAMS LTD.

Ivystone Group
301 Commerce Drive
Exton, PA 19341

Zemon Inc
6th Fl. No. 56, Sec. 4
Nanking East Road
Tapiei, TAIWAN

King's Craft (H.K.) Ltd.
9F, No. 205, Sec. 3
Pei-hsin Road Hsin-tien City,
Taipei Hsien, 231 TAIWAN

CFO Management Inc.
225 Fifth Avenue
Pos01
New York, NY 10010

Daly.commerce
1351 South County Trail
East Greenwich, RI 02818

Donovan Herron Richardson & Co
1500 Atlanta Gift Mart
230 Spring Street
Atlanta, GA 30303

Cliff Price & Company
Dallas Trade Mart
2100 Stemmons Freeway Ste 1860
Dallas, TX 75207

B. L. Rogers Inc.
35 West Street
P. O. Box 432
Northboro, MA 01532

Kingsweet Enterprises Co
3F-14, No. 9
San-ming Road
Taipei, TAIWAN

Greeting International Inc.
4th Fl, No. 51-1, Lane 35,
Jihu Rd, Neihu Chiu
Taipei, TAIWAN

Frank Maxwell & Associates
The Gift Center Showroom 557
888 Brannan Street
San Francisco, CA 94103

### LA SALLE BUSINESS CREDIT, LLC

Michael A. Kurshuk
First Vice President
LaSalle Business Credit LLC
565 Fifth Avenue, 27th Floor
New York, NY 10017

Raffi Shirinyan
LaSalle Business Credit, LLC
450 N. Brand Blvd., Suite 950
Glendale, CA 91203

Lowell A. Citron, Esq.
Loeb & Loeb LLP
345 Park Ave
New York, NY 10154

### WILLITTS DESIGNS INTERNATIONAL, INC.

Joseph Walsmith
Chief Executive Officer
1129 Industrial Avenue,
Petaluma, CA 94952

Peter A. Whitman
Ritchey Fisher Whitman & Klein,
A Professional Corporation
1717 Embarcadero Road, P.O. Box 51050
Palo Alto, California 94303

Mike C. Buckley
Reed Smith Crosby Heafey LLP
1999 Harrison Street
Oakland, California 94612-3572

**MASTER SERVICE LIST**
POSSIBLE DREAMS LTD.

<u>**DEBTOR**</u>
Possible Dreams, Ltd.
Attn: Mike Rizzo
Six Perry Drive
Foxboro, MA 02035

<u>**GOVERNMENTAL ENTITIES**</u>
Eastern Division of the District of
Massachusetts
Office of the U.S. Trustee
10 Causeway Street, Room 1184
Boston, MA 02222-1043

Commonwealth of Massachusetts
MA Deptartment of Revenue
P O Box 7046
Boston, MA 02204

Town of Walpole
Finance Department
P. O. Box 387
Walpole, MA 02081-0387

Massachusetts Department Of Revenue
Litigation Bureau - Bankruptcy Unit
P.O. Box 55484 - 51 Sleeper St.
Boston, MA 02205

Internal Revenue Service
Special Procedures Function STOP 20800
P.O. Box 9112 - JFK Building
Boston, MA 02203

<u>**SPECIAL COUNSEL**</u>
Diana C. Van Etten, Esq.
White White & Van Etten LLP
55 Cambridge Parkway
Cambridge, MA 02142

<u>**TOP 20 UNSECURED CREDITORS**</u>
Folkraft Co. Ltd
8F-3, 75 Hsin Tai Wu Rd Sec1
Hsi Chih
Taipei Hsien, TAIWAN

Asian Gift Alliance Ltd.
Taipei World Trade Center
Room 5e19, 5 Hsin-Yi Road,
Taipei, TAIWAN

Security Capital Corp., Inc.
One Pickwick Plaza
Suite # 310
Greenwich, CT 06830-2022

W.E. Andrews Co., Inc.
140 South Road
Bedford, MA 01730

Saratoga Forwarding Co., Inc.
80 Everett Avenue
Chelsea, MA 02150

Joseph Schriver
6 Dover Farm Road
Medfield, MA 02052

Todays Treasures Inc.
4 Th Fl No. 11, Lane 329
Sec 1 Tung Hua S. Rd.
Taipei, TAIWAN

Federal Express Corp.
Po Box 1140 Dept A
Memphis, TN 38101-1140

L.I.S.A.
55025 Coreglia Antelminelli
Lucca, ITALY